We'll hear the first case on calendar, Libertarian Party v. Cuomo. Good morning, Your Honors, and may it please the Court. I am James Zastrowski. I represent the appellants. Your Honors, my clients hired me because they were... Yes, Your Honor. Which clients are left? Yes, Your Honor. You seem to have the misfortune of losing clients along the way. One of them moved away, one of them died. That is correct, Your Honor. The other casualties... The Libertarian Party is no longer a viable party. I was persuaded by the arguments of counsel. I believe that we will be making a motion to dismiss Ginny Roeber, who is deceased. I'm trying to get in touch with her state administrator. With respect to Michael Kuzma, he was in the unlicensed category. He recently became unrestricted licensed. So he's in that category. What categories? That would be category with Philip Mayer and David Mangiello. The government is not challenging Murtari's standing. That's correct, Your Honor. That's the only one they're not challenging. They're basically taking the position that if you didn't apply, you don't have standing, and if you applied and got your license, you don't have standing. And you're . . . Yeah, and it's really . . . If you're challenging the licensing statute, and we are, and my clients believe that if the Supreme Court, under Heller and McDonnell, that the right to bear arms is a fundamental right, the first question is, how can you license a fundamental right? Now, it just so happens . . . Standing to anybody, right? I mean, anybody who . . . the way your client . . . could walk into court without having done anything. Well, Your Honor, I have agonized over facial challenges and as applied, and my understanding is that the doctrine is quite flexible, but we have a right here that if it's taken away, unlike the First Amendment, you can be killed. We said in the complaint that there's several hundred Americans killed, innocent Americans killed by police officers. There's certainly thousands of Americans who are murdered on the street. So, I think you have to look at the nature of the right when it comes to standing and the type of challenge to the statute. This is a fundamental right. It's a pre-existing right. That's why it says, the right to bear arms. It goes back to ancient England, and it's a right that's really the foundation of a country that was born in a revolution that threw off a gun control mission. So, this is . . . So, you're arguing everyone has standing? I am, Your Honor. I am. And we do ask the court to determine if this is a fundamental right. Not every taxpayer has standing, and you're going beyond that. People who don't pay taxes would have standing. Well, I think it's a different issue. Again, this is an issue that undergirds the very nature of a democracy, because if the people don't have the right of sovereignty, as exercised in the Declaration of Independence, how are they going to keep that sovereignty? You could say, well, we have elections. Well, what if elections were canceled? A lot of countries have had elections, and elections canceled. Now, we haven't had any of these things in this country, and we submit, well, we do have the right to bear arms. Now, there's been categories of citizens, and I point out in the brief, categories of people who are not considered citizens. And, oh my gosh, they were treated very harshly throughout history. Would it be your view that any individual who is planning to give a speech that is restricted by the government doesn't have to give the speech or doesn't have to even start giving the speech, just can plan on, know that they would not be able to speak if they spoke out, and therefore, they would have standing too? That's an excellent question, Your Honor, and I would go back to some of the scholarly works I've been reading, which say that it really goes back to the kind of right that we're talking about, and there have been cases involving the constitutional right of Roe v. Wade, where there wasn't very strict application as applied, and there was more of a facial challenge. But, again, Your Honor, I think the analogy would be if we licensed the First Amendment, and if you license the right to bear arms, which is absolutely fundamental and led to the creation of our very existence of our country, how can you... Campaign finance laws, you have to do various forms of registration, you have to do various forms of reporting. There are limits to how much expression you can have. The Supreme Court seems to think that that's okay. I think that's a narrow exception. Can you license... Very broad. It affects everybody. It affects you. It affects me. These limitations. Well, there is a limitation there. It's a different right. It's as fundamental as any other right. I take your point, Your Honor, but let me throw this out. If I can't give whatever $2,000 to a candidate, I'm not going to die the next day. If I don't have the right to protect myself, I might be dead the next day, because by the time you call the police, it's too late 99% of the time. So I think that's squarely the issue of the licensing, and even if the court is going to hold that New York can license, the New York regime, which treats the right to bear arms as an absolute privilege, unfettered discretion, there's almost no reversals, it takes years to get a permit in some cases, it takes thousands of dollars to challenge it, that right, however you interpret Heller, goes way beyond what Heller would allow, which is essentially, sure, it's not an exhaustive list, but felonies and people declared mentally incompetent? That doesn't square with the New York regime. If you're limited to one viable plaintiff, and that's Mattari . . . That's right. Don't you think that under intermediate scrutiny, there's discretion to deny the license to somebody who has been arrested 50 times, and obviously has some domestic problems, non-payment of child support, indicates separation or divorce, I mean, do you have to commit a felony in order to have a disability to carry arms? And according to you, you could have a felony every day and still have a right to carry arms. Well, I'm bound by the holding of Heller, and Heller talks about a felony. Yeah, but we might be bound by another case that's pending in the Supreme Court at some point, and I don't know if you've read the cert petition, and response to that in that case, it seems to me that there's going to be some overlap between that case and this case. I'm roughly familiar, but if I, maybe in my remaining seconds, say intermediate scrutiny. Here's our problem with intermediate scrutiny. Justice Breyer and Heller proposed a balancing test that I think was actually even more favorable to the gun owners, and Justice Scalia rejected that. Furthermore, intermediate scrutiny does not . . . Where is any value whatsoever given to the right to bear arms, whether it's the right against governmental tyranny, as we discussed in our brief, or the right against private crime? It's given zero weight. It's a formula that's predetermined to find that any particular law, based on some loose so-called empirical studies, will be valid. So I think that's our problem with intermediate scrutiny. It's not consistent with Heller. Thank you, Ron. Appreciate it. At some point, could you just mention the case of the New York State Rifle and Pistol Association against New York City that's before the Supreme Court, and the extent to which there's an overlap of the issues? Well, it's our view that now that there's no law-abiding and responsible plaintiff left in this case, that nothing NYSERPA says about the scope of the Second Amendment right impacting the law there, or the methodology for evaluating Second Amendment claims, would affect the outcome of this case, because this case now only features a person who is not law-abiding and responsible, and NYSERPA concerns the rights of law-abiding. Your adversary points out this is a person who has never committed a felony. It's not as though this person treads a straight and narrow path, but there's no felony, and Heller is speaking in terms of felonies. Heller made clear that the prohibitions on felons and mentally ill were presumptively lawful, but that those were illustrative examples and not exhaustive examples, and that's why multiple circuit courts have upheld prohibitions on other categories of individuals, such as domestic violence and misdemeanance, and in this case, Mr. Murtari was denied a firearm because a licensing officer concluded that his repeated failure to follow federal and state court orders constituted good cause. Don't you think that the current case that's pending in the Supreme Court, which bears upon the licensing system in New York, or it's actually in that case, I guess it's the city, the decision in that case would flesh out Heller and McDonald in terms of the extent to which states can regulate in this area, and that that is important to our decision? If this court were being put in the position of having to construe some aspects of the Second Amendment right or some aspects of the methodology for evaluating Second Amendment claims, yes, but this is now an easy case with Mr. Murtari because the kinds of restrictions that operated against him, the fact that his circumstances showed good cause for a denial, that's entirely consistent with the way that Heller itself defined the scope of the Second Amendment right, and it also clearly advances, substantially advances the interest in public safety, but the court doesn't have to reach that. I think you're maybe jumping the gun a little bit because your adversary is attacking the entire regulatory system, as I understand it, and you're assuming that the system can be valid in many instances, and that it's easy to deal with this particular plaintiff under those circumstances, but in a way, because of the argument he's making, don't we have to listen to what the Supreme Court says? And also, does intermediate scrutiny apply? That's going to be a question that is before them. Even if we just look at the scope of the historical right that Heller focused on, it was focused on law-abiding and responsible people. I mean, if this court has any concerns that the NYSRPA case may provide helpful guidance, the defendants would not object to the court holding the case, and if this case is still pending by the time that NYSRPA case is decided, then we'd appreciate the opportunity to submit supplemental briefs. But on the current posture, this case simply consists of a non-law-abiding and responsible person's challenge to New York's requirement to possess a license in order to possess a firearm, and New York's requirement that no license be issued to a person as to whom there's good cause for a denial. Mr. Mutari doesn't even have standing to challenge the good moral character or proper cause for public carrying aspects of New York's regulatory scheme, because those were not the reasons why he was denied a license. And enjoining those aspects of the scheme would not result in him getting a license. Go right ahead. Well, my friend on the other side made some reference to the fact that this being an enumerated right and a particular kind of right, it's inappropriate to license it or regulate it in any way. Heller itself disposed of that claim, and that's yet another reason why the NYSRPA case is not going to provide necessary further guidance for this court, because the principles that this court would need to resolve this particular case were already laid out in Heller. And Heller itself recognized that the Second Amendment right is not unlimited. It was a pre-existing right belonging to law-abiding and responsible people. And it is not a right that belongs to anybody whatsoever to do anything whatsoever. I just very briefly want to address Plaintiff Mutari's challenge to the good cause requirement. And that challenge can't state a claim regardless of the level of scrutiny that this court might apply, or whether means and scrutiny does apply. Because it's a long-standing provision that together with the good moral character requirement is designed to keep firearms away from people who are not law-abiding and responsible. And that's exactly how licensing officers and New York courts do read those terms. They read them in light of the statute, which makes clear that the criteria that licensing officers look to are characteristics that indicate whether somebody will comply with firearm laws and use firearm laws responsibly. Finally, my friend on the other side has suggested that means and scrutiny is inconsistent with Heller, because that was rejected by the Supreme Court in Heller, and that's not correct. The D.C. Circuit explained why that was in Heller, too, and it's that what Justice Breyer was proposing was an interest-balancing approach that looked to proportionality, whether the degree of burden on the Second Amendment right was proportionate to the degree of benefit that the government would get from the regulation. And Heller specifically noted that the problem with that approach is that it wasn't even similar to any type of means and scrutiny that courts ordinarily apply to constitutional rights. So Heller itself expressly distinguished between standards of scrutiny like intermediate scrutiny on the one hand and the interest-balancing approach on the other hand. If the court has no further questions, we would ask the court to dismiss the appeals of Mr. Cuthbert, the person who moved outside of New York State as moot, Ms. Raper, the person who died. Her appeal should also be dismissed as moot. And then the remainder of the district court's order dismissing the complaint should be affirmed. Thank you. Thank you. Dr. Rebuttal. Yes, Your Honor. Just briefly, Heller does have a list of factors and indicates that it's not exhaustive, but it would seem to be, have to be of that level of severity. If, for example, someone had a bunch of court orders that they did not comply with, would we take their First Amendment right away? Would we take their Fourth Amendment right away? Their Fifth Amendment right away? I would also like to point out that Mr. Mangiello, we believe, has standing for at least damages because his license was suspended without just cause, without any notice, and there was a considerable delay, which I think is pointed out in the complaint, which obviously must be deemed correct. How do you value the damages of the delay? I think we'd love to get that in front of a jury, Your Honor, and ask them to award damages just like they would in a false arrest case or many types of First Amendment retaliation case, which I handle a lot of those. Unless the court has any further questions. I believe the problem with the intermediate scrutiny, and I don't deny the description of counsel, is again, at the end of the day, it gives zero weight to the value . . . However you define it, zero weight to the value of the right to bear arms, and that's inconceivable. Thank you. Thank you both. We'll reserve decision.